UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TERREAL DAVIS,

    Petitioner,

v.

CASE NO. 2:17-CV-14046
HONORABLE ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

    Respondent.
_____/

# OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Michael Terreal Davis, ("petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney Gerald E. Lorence. Petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317, two counts of unlawful imprisonment, M.C.L.A. 750.349b, and possession of a firearm in the commission of a felony (felony-firearm), M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I. Background

Petitioner's convictions arise out of an incident that happened in Detroit, Michigan on October 23, 2012. Angela Black and her boyfriend Deangelo

1

Applewhite met with petitioner to have him repair something on Mr. Applewhite's car. Petitioner at some point took out a gun and stated "you know what he did" and fired a shot at the ceiling. Petitioner ordered Mr. Applewhite and Ms. Black into the trunk of a car. Mr. Applewhite opened the trunk, escaped, and began running. Petitioner's girlfriend Sabrina Wakefield was driving another car and she used it to drive into Mr. Applewhite, who rolled off of the hood and continued running. Petitioner killed Mr. Applewhite by shooting him three times as he was attempting to climb a fence. Ms. Wakefield testified against petitioner in exchange for being allowed to plead guilty to second-degree murder with a sentence agreement of 10 to 25 years.

Petitioner was originally charged with first-degree murder, two counts of unlawful imprisonment, one count of torture, and felony-firearm. At petitioner's first trial, the jury acquitted him of first-degree murder and the torture charge, but informed the judge that they could not reach a verdict on the remaining counts, including the lesser included offense of second-degree murder on the original first-degree murder charge. Over defense counsel's objection, the judge declared a mistrial.

Following a re-trial, petitioner was convicted of second-degree murder and the remaining charges.

Petitioner's conviction was affirmed but the case was remanded for re-sentencing. *People v. Davis*, No. 325565, 2016 WL 3005610 (Mich. Ct. App. May

2

24, 2016), *lv. den.* 500 Mich. 882, 886 N.W.2d 441 (2016). [1]

Petitioner seeks a writ of habeas corpus on the following grounds:

A. THE TRIAL COURT DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL BY DENIGRATING DEFENSE COUNSEL AND BY HOLDING HER IN CONTEMPT IN FRONT OF THE JURY.

B. THE PETITIONER WAS RETRIED IN VIOLATION OF HIS RIGHT TO BE FREE FROM DOUBLE JEOPARDY WHEN THE TRIAL COURT DECLARED A MISTRIAL ABSENT MANIFEST NECESSITY.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme

---

[1] Petitioner was re-sentenced on January 26, 2017 and is currently appealing his re-sentencing. Petitioner does not raise any claims in his petition pertaining to his original sentence or the sentence he received at re-sentencing.

3

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Court notes that the Michigan Court of Appeals reviewed and rejected petitioner's first claim under a plain error standard on the ground that petitioner failed to preserve the issue as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). [2]

---

[2] Respondent argues that petitioner's claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). This Court believes it would be easier to address the merits of the claim.

4

## III. Discussion

### A. Claim # 1. The judicial misconduct claim.

Petitioner argues that the judge denied him a fair trial at his re-trial because the judge denigrated defense counsel and held her in contempt in front of the jury.

During the second day of trial, the judge became upset with the way that the defense attorney, Ms. Slomski, was cross examining witnesses as well as her method of responding to objections. (Tr. 11/18/14, p. 143). When Ms. Slomski tried to defend a question in response to the prosecutor's objection, the judge remarked:

> THE COURT: Well, this is, again, an example of not being able to follow simple orders. Remember just before when I said when there's an objection, that's my opportunity to not answer, and not an opportunity for you to engage in a dialogue with the objector. And I had just said it. And two seconds later another objection, and you went straight back to what you did before. Why don't we have a break so that everybody can think about before they act. So that it will try to be consistent with the orders of the Court. Let's just take a little break.

(*Id.*, p. 144).

The following day of trial, defense counsel attempted to respond to another objection from the prosecutor. The judge stated: "Ma'am, I didn't ask you to comment. I am thinking. And so while I am quiet, I would love you to be quiet, also, please." (Tr. 11/19/14 P.M., p 77). Later in the day, the judge excused the jury and outside of their presence warned defense counsel she had

5

"wandered into land of contempt of court." (*Id.*, p. p 89). When the jury was brought back, the judge held defense counsel in contempt, noting that she was "fined again" and that "it should be noted, let's see it's three forty-one." (*Id.*, p. 95). The judge later criticized defense counsel in front of the jury for "repeating testimony" and told her that he had admonished her not to do that. (*Id.*, pp. 105 - 106).

> The Michigan Court of Appeals rejected petitioner's claim:
>
> We have closely reviewed each of defendant's allegations of judicial bias, and, viewing the totality of the circumstances in this case, the record does not support a conclusion that the trial court's conduct "creat[ed] the appearance of advocacy or partiality" against one party more than the other, *id.*
>
> A review of the record confirms that the trial court engaged in similar behavior with the prosecutor, closely controlling the prosecutor's questioning of witnesses. Additionally, the trial court provided the following curative instruction at the close of the proofs:
>
>> And this trial, I have had to be a little active asking people not to repeat questions, ruling on objections. The fact that I might have overruled something once or twice or somebody might have been more vocal than another, that doesn't have anything to do without how you should handle yourselves in this matter.
>
> The trial court also instructed the jury at the beginning of trial that it was to decide the case on the basis of the evidence, and that "[a]nything that I say is not evidence." "[J]urors are presumed to follow their instructions." Accordingly, we are satisfied that these instructions "alleviate[d] any appearance of advocacy or partiality by the judge [,]" and protected defendant's right to a fair trial.
>
> *People v. Davis*, 2016 WL 3005610, at * 1–2 (internal citations and quotations omitted).

Under the Fourteenth Amendment's Due Process Clause, a criminal defendant has the right to a fair trial before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). A judge has wide latitude in conducting trials, but he or she must maintain an attitude of impartiality to avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

A federal court in reviewing an allegation of judicial misconduct in a habeas corpus petition must determine whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To obtain habeas relief on a claim that a state trial judge was biased, a habeas petitioner must show that the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions

7

of impatience, dissatisfaction, annoyance, and even anger" do not demonstrate judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

In *Gordon v. Lafler,* 710 F. App'x. 654 (6th Cir. 2017); *petition for cert.filed* No. 17-1404 (U.S. April 11, 2018), the Sixth Circuit held that the habeas petitioner was not entitled to relief on his judicial bias claim, even though the judge interrupted defense counsel's questioning of witnesses multiple times, interjected himself at least three times when a witness appeared to evade the question, reprimanded defense counsel in front of the jury several times, made derogatory remarks towards defense counsel, such as when the judge sarcastically inquired, "[D]on't they teach you legal courtesy in law school these days?", and made various comments that "could certainly be considered inappropriate and lacking in tact." *Id.,* at 661-65. Notwithstanding these various actions, the Sixth Circuit held that the petitioner was not entitled to habeas relief because he "failed to establish that the judge exhibited conduct sufficient to establish unconstitutional judicial bias." *Id.* at 665.

The judge's comments in petitioner's case were far less egregious or intrusive than the judge's conduct and remarks in *Gordon.* In several instances, the judge sustained the prosecutor's objections to defense counsel's questions

8

of various witnesses. The judge became impatient with counsel's attempts to continue arguing after he ruled on the matters. Although the trial judge expressed his impatience and frustration with defense counsel during trial, his remarks were generally in response to defense counsel's combative style and failure to accept the court's direction, thus, the judge's conduct was not so prejudicial so as to deprive petitioner of a fair trial. *See Gordon,* 710 F. App'x. 664-65, See also *Todd v. Stegal,* 40 F. App'x. 25, 27 (6th Cir. 2002). In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself. There is no showing that the trial judge ever intimated his opinion on the merits of the case." *Id.* at 27. Moreover, any prejudice was also cured by the fact that the judge instructed the jury at the beginning of trial that anything he said was not evidence. (Tr. 11/18/14, p. 9). *Todd,* 40 F. App'x. at 28.

Given the evidence presented on this claim, this Court cannot conclude that the trial court judge's comments rendered the trial fundamentally unfair, nor does the Court find that the Michigan Court of Appeals' decision on this issue was contrary to or an unreasonable application of Supreme Court precedent, as to warrant habeas relief. *See Gordon,* 710 F. App'x. at 665.

**B. Claim # 2. The Double Jeopardy claim.**

Petitioner claims that the trial court judge erred in declaring a mistrial at petitioner's first trial, because petitioner did not consent to the mistrial nor was there a manifest necessity to declare one. Petitioner argues his second trial and

9

conviction violated the Double Jeopardy Clause.

The Michigan Court of Appeals rejected the claim:

Affording the trial court great deference in its ultimate decision, we do not agree with defendant that any abuse of discretion occurred. The record reflects that when first informed that the jury was struggling to reach a unanimous verdict, the trial court gave a lengthy, detailed, and thorough instruction advising the jury how to continue to deliberate with the goal of reaching a unanimous verdict. The trial court subsequently took great time and effort reviewing the notes from the jurors regarding their inability to reach a unanimous verdict on several of the charged counts, and went to the effort of polling each juror individually to determine if there was any possibility of reaching a unanimous verdict. While defendant contends that the trial court did not adhere to the deadlocked jury instruction in M Crim JI 3.12, it is worthy of note that the trial court was not required to give such an instruction.

***************************************************************************

Additionally, while the jury did deliberate for a relatively short time in defendant's first trial, the testimony in defendant's first trial consumed only 2¼ days, and was not particularly complex. Further, notes from the jury, as well as the trial transcript, clearly reflected that the jury was deadlocked on several counts, and that there was no possibility of the jury reaching a verdict. The Michigan Supreme Court has held that this is a fact of particular importance in evaluating a trial court's decision to declare a mistrial. To the extent that defendant argues that the jury should have been required to deliberate longer, the Michigan Supreme Court has cautioned against such action, where it bears the possible danger of coercing a verdict. Finally, defendant's argument that the jury was not "genuinely deadlocked" lacks support in his citation of *[Arizona v.] Washington*, 434 U.S. at 509, and his assertion is implausible, given that the jury was unequivocal that it could not agree, both on the record with the trial court and in its written notes. Accordingly, on this record, we are not persuaded that the trial court abused its discretion in concluding that manifest necessity existed to warrant declaring a mistrial. In sum, defendant's assertion that his right to be protected against successive prosecutions was violated is without merit.

*People v. Davis*, 2016 WL 3005610, at * 3-4 (additional citations omitted).

The crucial question on habeas review of petitioner's state court conviction "is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for [him] to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the [Michigan Court of Appeals] that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." *Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

When a judge discharges a jury because the jury was unable to reach a verdict, the Double Jeopardy Clause does not prohibit a new trial for the defendant before a new jury. *Renico v. Lett,* 559 U.S. at 773 (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)). "Unlike the situation in which the trial has ended in an acquittal or conviction," the Double Jeopardy Clause does not automatically bar the retrial of a defendant when a criminal trial is terminated without a final resolution of the charges against the accused, provided that there is a "manifest necessity" for declaring a mistrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). The concept of "manifest necessity" was first enunciated by Justice Story in *Perez:*

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a

sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.... But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*Perez*, 22 U.S. (9 Wheat.) at 580.

A trial judge's belief that a jury is "genuinely deadlocked" has "long [been] considered the classic basis for a proper mistrial." *Washington,* 434 U.S. at 509; *see also Downum v. United States*, 372 U.S. 734, 736 (1963)(deadlocked jury is the "classic example" of when the State may try the same defendant twice). A trial judge must be "accorded great deference by a reviewing court" in deciding whether a jury is deadlocked. *Washington,* 434 U.S. at 510. The Supreme Court "expressly declined to require the 'mechanical application' of any 'rigid formula' when trial judges decide whether jury deadlock warrants a mistrial." *Renico v. Lett,* 559 U.S. at 775. The Supreme Court, in fact, has "never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse." *Id.* Most importantly, the Supreme Court has never "overturned a trial court's declaration of a mistrial after a jury was unable to

reach a verdict on the ground that the 'manifest necessity' standard had not been met." *Id.* (quoting *Winston v. Moore*, 452 U.S. 944, 947 (1981)(Rehnquist, J. dissenting).

In *Renico v. Lett*, the Supreme Court held that the Michigan Supreme Court's affirmance of a state trial judge's rapid declaration of a mistrial because the judge found the jury to be deadlocked was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached. " 559 U.S. at 776-78.

In the present case, the Michigan Court of Appeals' rejection of the petitioner's Double Jeopardy claim was not an unreasonable application of clearly established federal law. Petitioner's first trial took place over the course of three days. The jury left the courtroom to begin its deliberations at 12:26 p.m. (Tr. 7/10/2014, p. 98). At 3:19 p.m. the judge called the jury back into the courtroom in response to a note from the jurors. (*Id.*). The judge spoke to the jurors before they left the courtroom. (*Id.,* p. 99). There is no indication from the transcript how much longer the jury deliberated on July 10, 2014.

The July 11, 2014 transcript begins at 11:45 a.m. with the judge asking his bailiff to bring the jury into the courtroom because the judge needed to speak

13

with them because they kept informing the court that they could not reach a decision. The judge noted that the jury kept sending him little notes telling him what the breakdown in the voting was. (Tr. 7/11/14, p. 3). The judge gave a lengthy, detailed, and thorough instruction advising the jury about how they should continue to deliberate with the goal of reaching a unanimous verdict. (*Id.,* pp. 3–8). The judge indicated that the jury had deliberated an hour and forty-five minutes or two hours the day before and three hours on that day. (*Id.,* p. 5). The jurors began deliberating again at 11:53 a.m. (*Id., p.* 8.)

At 1:40 p.m. the judge went back on the record and stated that the jurors had sent him a note stating that it could not reach a verdict on any but one of the charges. (*Id.*, p. 10). The judge reconvened the jury in the courtroom and said it had received a note that the jury was deadlocked. The judge then asked each juror individually if he or she believed further deliberations might result in a verdict. (*Id.,* p. 14). The judge sent the jurors back to continue further deliberations when two jurors indicated during the polling that additional deliberations might produce a verdict. (*Id.,* p. 16). The judge went back on the record and hour and 15 minutes later indicating that another note had been sent stating that the jury was "surely deadlocked." (*Id., p.* 18). The jury confirmed that it had reached a verdict on one count but was deadlocked on all the others. (*Id.,* p. 20). A juror announced that the jury had reached a not guilty verdict on the torture charge and the first-degree murder charge. (*Id.,* pp. 21, 24). The judge

noted that there was no decision on the lesser charge of second-degree murder or unlawful imprisonment or felony-firearm. (*Id., p.* 26).

The fact that the jurors expressly indicated that they would be unable to reach a verdict on all of the counts supports the judge's decision to declare a mistrial. *Renico v. Lett,* 559 U.S. at 778. Even if the trial judge could have taken additional steps before declaring a mistrial, none were required, either under the Supreme Court's double jeopardy precedents or, by extension, the AEDPA. *Id.* at 779. The petitioner is not entitled to habeas relief on his second claim.

### C. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v.*

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

15

*McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt regarding whether to grant a COA is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the 25-50 year sentence that he is serving on his second-degree murder charge, plus the consecutive 2 year sentence that he is serving on the felony-firearm conviction. The Court issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. *See Brown v. United States,* 187 F. Supp. 2d 887, 893 (E.D. Mich. 2002).

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Davis is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: May 24, 2018

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on May 24, 2018, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant